POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
jpafiti@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190

*Counsel for Movants Brandon Mitchell Waldaias and Aaron Saran and Proposed Co-Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSTAFA OMAR ALJENDAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BEYOND MEAT, INC., *et al.*,<br><br>Defendants. | Case No. 2:26-cv-00742-FMO (PVCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF BRANDON MITCHELL WALDAIAS AND AARON SARAN FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**<br><br>DATE: April 23, 2026<br>TIME: 10:00 a.m.<br>JUDGE: Fernando M. Olguin<br>CTRM: 6D |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:26-cv-00742-FMO (PVCx)

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     STATEMENT OF FACTS.......................................................................................3

III.    ARGUMENT..........................................................................................................6

      A.    WALDAIAS AND SARAN SHOULD BE APPOINTED CO-LEAD PLAINTIFFS.....................................................................................................6

           1.    Waldaias and Saran Are Willing to Serve as Class Representatives..7

           2.    Waldaias and Saran Have the "Largest Financial Interest" ................8

           3.    Waldaias and Saran Otherwise Satisfy Rule 23's Requirements .......9

           4.    Waldaias and Saran Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses 13

      B.    CO-LEAD PLAINTIFF**S'** SELECTION OF COUNSEL SHOULD BE APPROVED ..................................................................................................14

IV.     CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bruce v. Suntech Power Holdings Co.*,
No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) .............13

*Hessefort v. Super Micro Comput., Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...........................................................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...............................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..................................................................................................................8

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ...............................................................................12

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................8

*In re Solar City Corp. Sec. Litig.*,
No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017)..............10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................14

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..............................................................9

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..........................8, 9

*Nicolow v. Hewlett Packard Co.*,
No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013)........................9

*Osher v. Guess?, Inc.*,
No. CV01-00871LGB(RNBX), 2001 WL 861694 (C.D. Cal. Apr. 26, 2001) ...........................................................................................................14, 15

*Perrin v. Sw. Water Co.*,
No. 208CV7844FMCAGRX, 2009 WL 10654690 (C.D. Cal. Feb. 13, 2009) ..................................................................................................12, 13

*Richardson v. TVIA, Inc.*,
No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .............10

*Robb v. Fitbit Inc.*,
No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) .........12, 13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ............................................................................11

*Tai Jan Bao v. SolarCity Corp.*,
No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ...........10

**Statutes**

15 U.S.C. § 78u-4...................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .............................................*passim*

**Rules**

Fed. R. Civ. P. 23 ...................................................................................*passim*

Movants Brandon Mitchell Waldaias ("Waldaias") and Aaron Saran ("Saran") respectfully submit this Memorandum of Points and Authorities in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Waldaias and Saran as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Beyond Meat, Inc. ("Beyond Meat" or the "Company") securities between February 27, 2025 and November 11, 2025, both dates inclusive (the "Class Period"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer") as Co-Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the Defendants defrauded investors in violation of the Exchange Act. Beyond Meat investors, including Waldaias and Saran, incurred significant losses following the disclosures of the alleged fraud, which caused Beyond Meat's share price to fall sharply, damaging Waldaias, Saran, and other Beyond Meat investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the litigation and that satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23").

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Waldaias and Saran, in the aggregate: (1) purchased or acquired 71,629 shares of Beyond Meat common stock; (2) purchased or acquired 22,998 net shares of Beyond Meat common stock; (3) expended $290,447 in net funds on Beyond Meat securities; and (4) as a result of the disclosures of the Defendants' alleged fraud, incurred losses of approximately $267,861. *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") 1 at *2. Accordingly, Waldaias and Saran believe that they have the largest financial interest in the relief sought in this litigation. Beyond their considerable financial interest, Waldaias and Saran also meet the applicable requirements of Rule 23 because their claims are typical of those of absent Class members and they will fairly and adequately represent the Class's interests.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute this litigation on behalf of the Class, Waldaias and Saran have selected Pomerantz and Holzer as Co-Lead Counsel for the Class. These firms and their attorneys are highly experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.

Accordingly, Waldaias and Saran respectfully request that the Court enter an Order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz and Holzer as Co-Lead Counsel for the Class.

## II.   STATEMENT OF FACTS

As alleged in the Complaint in the Action, Beyond Meat operates in the food industry, developing, manufacturing, marketing, and selling plant-based meat products under the "Beyond" brand name in the U.S. and internationally. Dkt. No. 1 ¶¶ 2, 26. The Company owns and leases multiple production, warehousing, research and development, and other properties in the U.S. and abroad. *Id.*

Since at least early 2025, facing shrinking demand for its products and ballooning debt and losses, Beyond Meat's primary goal has been to achieve operations with positive earnings before interest, taxes, depreciation and amortization ("EBITDA") by the end of 2026. *Id.* ¶¶ 3, 27. Indeed, on February 26, 2025, during Beyond Meat's earnings call for the fourth quarter and full year of 2024, the Company's President, Chief Executive Officer, and founder, Defendant Ethan Brown, stated that "I want everybody entirely focused on that" goal. *Id.*

At all relevant times, Defendants consistently and repeatedly touted their focused efforts to achieve EBITDA-positive operations by year-end 2026. *Id.* ¶¶ 4, 28. Accordingly, throughout the Class Period, Defendants repeatedly emphasized that they were rigidly focused on operating expense reduction, gross margin expansion, and broader operational efficiency and optimization at the expense of other aspects of the Company's business, such as revenue growth, which they explicitly deemphasized as a business concern. *Id.*

Notwithstanding the foregoing, at all relevant times, Defendants disclosed no anticipated or actual need to record significant asset impairment charges attributable to certain of Beyond Meat's long-lived assets, including its property, plant, and equipment ("PP&E"), operating lease right-of-use ("ROU") assets, or prepaid lease costs. *Id.* ¶¶ 5, 29.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. *Id.* ¶¶ 6, 47. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the book value of certain of Beyond Meat's long-lived assets exceeded their fair value, making it highly likely that the Company would be required to record a material, non-cash impairment charge; (ii) the foregoing was likely to impair Beyond Meat's ability to timely file its periodic filings with the U.S. Securities and Exchange Commission ("SEC"); and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times. *Id.*

The truth began to emerge on October 24, 2025, when, during premarket hours, Beyond Meat filed a current report on Form 8-K with the SEC, reporting the Company's preliminary financial results for the third quarter ("Q3") of 2025. *Id.* ¶¶ 7, 49. Therein, Defendants revealed that the Company "expects to record a noncash impairment charge for the three months ended September 27, 2025, related to certain of its long-lived assets," which it "expected to be material." *Id.*

On this news, Beyond Meat's stock price fell $0.655 per share, or 23.06%, to close at $2.185 per share on October 24, 2025. *Id.* ¶¶ 8, 52.

On November 3, 2025, during pre-market hours, Beyond Meat issued a press release announcing that it would delay reporting its financial results for Q3 2025, citing the need for additional time to complete its impairment review. *Id.* ¶¶ 9, 53.

On this news, Beyond Meat's stock price fell $0.265 per share, or 16.01%, to close at $1.39 per share on November 3, 2025. *Id.* ¶¶ 10, 55.

On November 10, 2025, during post-market hours, Beyond Meat issued a press release announcing its financial results for Q3 2025. *Id.* ¶¶ 11, 56. Among other results, Beyond Meat reported that its loss from operations for the quarter was $112.3 million, which included "$77.4 million in non-cash impairment charges related to certain of the Company's long-lived assets." *Id.*

On this news, Beyond Meat's stock price fell $0.12 per share, or 8.96%, to close at $1.22 per share on November 11, 2025. *Id.* ¶¶ 12, 57.

Then, on November 11, 2025, during post-market hours, Beyond Meat hosted a conference call with investors and analysts to discuss its financial results for Q3 2025. *Id.* ¶¶ 13, 58. During the call, the Company's Chief Financial Officer and Treasurer, Defendant Lubi Kutua, disclosed, in relevant part, that "[t]he total impairment amount of $77.4 million was . . . allocated to PP&E, operating lease ROU assets and prepaid lease costs on our balance sheet." *Id.*

On this news, Beyond Meat's stock price fell an additional $0.105 per share, or 8.61%, to close at $1.115 per share on November 12, 2025. *Id.* ¶¶ 14, 59.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Waldaias, Saran, and other Class members have suffered significant losses and damages. *See id.* ¶¶ 15, 62.

## III.   ARGUMENT

### A.   WALDAIAS AND SARAN SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Waldaias and Saran should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in this litigation to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice, and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B)(i)-(ii).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Waldaias and Saran satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

**1.    Waldaias and Saran Are Willing to Serve as Class Representatives**

On January 23, 2026, counsel for the plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Beyond Meat and other defendants, and advising investors in Beyond Meat securities that they had until March 24, 2026—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. 2 at *2.

Waldaias and Saran have filed the instant motion pursuant to the Notice, and they have submitted sworn Certifications attesting that they are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. 3 at *2-3; *id.*, Ex. 4 at *2-3. Accordingly, Waldaias and Saran satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### 2.    Waldaias and Saran Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  To the best of their knowledge, Waldaias and Saran have the largest financial interest of any Beyond Meat investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  In accord with other courts nationwide,[1] these

---

[1] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

so-called *Lax* factors have been adopted by courts in the Ninth Circuit. *See Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (Internal quotation marks and citations omitted.)); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same). Of the *Lax* factors, courts in the Ninth Circuit generally emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, Waldaias and Saran, in the aggregate: (1) purchased or acquired 71,629 shares of Beyond Meat common stock; (2) purchased or acquired 22,998 net shares of Beyond Meat common stock; (3) expended $290,447 in net funds on Beyond Meat securities; and (4) as a result of the disclosures of the Defendants' alleged fraud, incurred losses of approximately $267,861. *See* Pafiti Decl., Ex. 1 at *2. As such, Waldaias and Saran believe that they possess the largest financial interest in the outcome of this litigation within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Waldaias and Saran Otherwise Satisfy Rule 23's Requirements

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil

Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that a movant satisfies Rule 23's requirements is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Waldaias and Saran's claims are typical of those of the Class. Waldaias and Saran allege, like other Class members, that the Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Beyond Meat, or by omitting to state material facts necessary to make the statements they did make not misleading. Waldaias and Saran, like other Class members, purchased Beyond Meat securities during the Class Period at prices alleged to have been artificially inflated by the Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Beyond Meat's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Waldaias and Saran are adequate representatives for the Class. There is no evidence of antagonism or conflict between Waldaias and Saran's interests and those of the Class. Moreover, Waldaias and Saran have submitted sworn Certifications declaring their respective commitment to protecting the interests of the Class (*see* Pafiti Decl., Ex. 3 at

*2-3; *id.*, Ex. 4 at *2-3), and their significant losses incurred as a result of the Defendants' alleged malfeasance demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.  Further, as set forth in greater detail below, in Pomerantz and Holzer, Waldaias and Saran have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz and Holzer to the Court for approval as Co-Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Further, Waldaias and Saran constitute an appropriate movant duo of the type routinely appointed to serve as co-lead plaintiffs. *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (holding "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff); *Perrin v. Sw. Water Co.*, No. 208CV7844FMCAGRX, 2009 WL 10654690, at *3 (C.D. Cal. Feb. 13, 2009) ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *7 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff).

Waldaias and Saran likewise have demonstrated their adequacy because they are a cohesive pair of investors who have submitted a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek

appointment jointly as co-lead plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Pafiti Decl., Ex. 5 at *2-6.  Courts routinely appoint more than one investor as co-lead plaintiffs pursuant to the PSLRA under such circumstances.  *See, e.g.*, *Perrin*, 2009 WL 10654690, at *3-4 (appointing group of four investors that "submitted a Joint Declaration agreeing to work together to ensure the maximum recovery on behalf of the proposed class" (internal quotation marks omitted)); *Fitbit*, 2016 WL 2654351, at *4, *7 (appointing five-person investor group that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus"); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (appointing group of three investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class").

### 4. Waldaias and Saran Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption favoring Waldaias and Saran's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Waldaias and Saran's ability and desire to fairly and adequately represent the Class has been discussed above.  Waldaias and Saran are not aware of any unique defenses the Defendants could raise that would render them inadequate to represent the Class. Accordingly, Waldaias and Saran should be appointed Co-Lead Plaintiffs for the Class.

**B.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at \*4 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with a lead plaintiff's selection only when necessary to "protect the interests of the class" (*id.* § 78u-4(a)(3)(B)(iii)(II)(aa)).  *See Osher*, 2001 WL 861694, at \*4 ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class." (Internal quotation mark omitted.)); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Waldaias and Saran have selected Pomerantz and Holzer as Co-Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and

class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Pafiti Decl., Ex. 6 at *3-13. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* at *3. For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* at *4. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at *4-7. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at *4.

Holzer, too, is highly experienced in the areas of securities litigation and class actions. *See id.*, Ex. 7 at *2-4. Holzer recently recovered $22.25 million for the class of investors in *Davis v. Yelp, Inc., et al.*, No. 18-CV-400-EMC (N.D. Cal.), and $20 million for the class of investors in *Peralta v. Grana y Montero S.A.A., et al.*, No. 17-cv-1105-LDH (E.D.N.Y.), is currently serving as Co-Lead Counsel along with Pomerantz on behalf

of a class of investors in *Blake v. Canoo, Inc., et al.*, No. 21-cv-2873-FMO (C.D. Cal.), and has successfully served as Co-Lead Counsel in numerous other shareholder class actions during the firm's 20-year history. *See id.*

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, Waldaias and Saran's counsel, Pomerantz and Holzer, have the skill, knowledge, expertise, and experience that will enable these firms to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Waldaias and Saran's selection of Pomerantz and Holzer as Co-Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.   CONCLUSION

For the foregoing reasons, Waldaias and Saran respectfully request that the Court issue an Order: (1) appointing Waldaias and Saran as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz and Holzer as Co-Lead Counsel for the Class.

Dated: March 24, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
jpafiti@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190

HOLZER & HOLZER, LLC
Corey D. Holzer*
cholzer@holzerlaw.com

211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Movants Brandon Mitchell
Waldaias and Aaron Saran and Proposed
Co-Lead Counsel for the Class*

\**Pro hac vice* application forthcoming

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Brandon Mitchell Waldaias and Aaron Saran, certifies that this brief contains 3,936 words, which complies with the word limit of L.R. 11-6.1.

Executed on March 24, 2026.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti