LATHAM & WATKINS LLP
   Michele D. Johnson (Bar No. 198298)
      *michele.johnson@lw.com*
   Ryan A. Walsh (Bar No. 294506)
      *ryan.walsh@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel.:  +1.714.540.1235; Fax: +1.714.755.8290

   Heather A. Waller (admitted *Pro Hac Vice*)
      *heather.waller@lw.com*
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel.: +1.312.876.7700; Fax: +1.312.993.9767

*Attorneys for Defendants Beyond Meat, Inc.,*
*Ethan Brown, and Lubi Kutua*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BEYOND MEAT, INC. SECURITIES LITIGATION | Case No. 2:26-cv-00742-FMO-PVC |
| | <u>Class Action</u> |
| | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| THIS DOCUMENT RELATES TO: All Actions | Hearing: Date:    October 29, 2026 Time:    10:00 a.m. Place:    Courtroom 6D Hon. Fernando M. Olguin |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................9

II.   BACKGROUND ...............................................................................................10

      A.    After Early Success, Beyond's Growth Is Stymied By Operational And Financial Struggles.................................................10

      B.    Beyond Is Candid With Investors Regarding Its GAAP Judgments..............................................................................................12

      C.    Throughout 2025, Beyond Disclosed Continued Business Struggles..............................................................................................13

      D.    Beyond Discloses Non-Cash Impairment Of Long-Lived Assets And Material Weaknesses, And Corrects Immaterial Accounting Errors ...........................................................13

III.  ARGUMENT ....................................................................................................15

      A.    Plaintiffs Fail To Allege A Strong Inference of Scienter .................16

            1.    Plaintiffs Do Not Allege The Individual Defendants Acted With An Intent To Deceive Or Deliberate Recklessness ...................................................................................16

                  a.    Alleged GAAP Failures Do Not Support Scienter..................................................................................16

                  b.    SOX Certifications Do Not Support Scienter ..............17

                  c.    The CWs Do Not Support Scienter .............................17

                  d.    Engagement And High-Level Positions Do Not Support Scienter ...............................................20

                  e.    Core Operations Doctrine Does Not Support Scienter..................................................................................21

                  f.    Plaintiffs' Motive Speculation Does Not Support Scienter ...............................................................22

            2.    Plaintiffs Do Not Allege Corporate Scienter .........................23

            3.    The More Compelling Inference Is Good Faith, Not Fraud ..........................................................................................24

      B.    Plaintiffs Fail To Allege Falsity........................................................25

            1.    Statements Relating To Long-Lived Assets Were Not False Or Misleading.........................................................25

2

a.    Plaintiffs Do Not Allege A GAAP Violation ................. 25

b.    Plaintiffs Do Not Allege An Actionable Opinion .................................................................. 25

c.    Beyond's Risk Disclosures Are Not Actionable ............................................................... 27

d.    Plaintiffs Do Not Allege An Item 303 Violation ............................................................... 28

2.    The Controls And GAAP-Compliance Statements Are Inactionable Opinions ........................................ 29

C.    Plaintiffs Fail To Allege Scheme Liability ......................................... 29

D.    Plaintiffs' 20(a) Claims Should Be Dismissed .................................. 30

IV.    CONCLUSION ........................................................................................ 30

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No.: 2:26-cv-00742-FMO-PVC
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT

## CASES

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) .......................................................22

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) .................................................................................27

*Bajjuri v. Raytheon Techs. Corp.*,
641 F. Supp. 3d 735 (D. Ariz. 2022) ...................................................................17

*Bao v. Solarcity Corp.*,
2016 WL 4192177 (N.D. Cal. Aug. 9, 2016) ................................................17, 24

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ...............................................................17

*Bruce v. Suntech Power Holdings Co. Ltd.*,
2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) .....................................................25

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
65 F. Supp. 3d 840 (N.D. Cal. 2014).............................................................25, 26

*City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Ltd. Co.*,
655 F. Supp. 2d 262 (S.D.N.Y. 2009).............................................................26, 27

*Curry v. Hansen Med., Inc.*,
2011 WL 3741238 (N.D. Cal. Aug. 25, 2011)......................................................18

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017)..............................................................................15

*Duffaydar v. Sonder Holdings Inc.*,
2025 WL 4697183 (C.D. Cal. Aug. 27, 2025)................................................16, 20

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................15

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024)................................................................................21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No.: 2:26-cv-00742-FMO-PVC
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT

*Garcia v. J2 Glob., Inc.*,
    2022 WL 22717936 (C.D. Cal. Aug. 8, 2022), *aff'd sub nom.* 99
    F.4th 527 (9th Cir. 2024) ...................................................................................20

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) .............................................................................15

*Habelt v. iRhythm Techs., Inc.*,
    2022 WL 971580 (N.D. Cal. Mar. 31, 2022) ....................................................27

*Hufnagle v. Rino Intern. Corp.*,
    2013 WL 160223 (C.D. Cal. Jan. 14, 2013) .....................................................29

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
    2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ....................................................29

*In re Apple Computer, Inc.*,
    127 F. App'x 296 (9th Cir. 2005) ......................................................................18

*In re Baxter Int'l Inc. Sec. Litig.*,
    2021 WL 100457 (N.D. Ill. Jan. 12, 2021) .......................................................23

*In re Biogen Inc. Sec. Litig.*,
    857 F.3d 34 (1st Cir. 2017) ...............................................................................19

*In re Cadence Design Sys., Inc. Sec. Litig.*,
    654 F. Supp. 2d 1037 (N.D. Cal. 2009) ...........................................16, 17, 22, 24

*In re Crocs, Inc. Sec. Litig.*,
    774 F. Supp. 2d 1122 (D. Colo. 2011) ..............................................................18

*In re Dot Hill Sys. Corp. Sec. Litig.*,
    594 F. Supp. 2d 1150 (S.D. Cal. 2008) .............................................................19

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 11428 (C.D. Cal. 2007) ..........................................................17

*In re Int'l Rectifier Corp. Sec. Litig.*,
    2008 WL 4555794 (C.D. Cal. May 23, 2008) ...................................................24

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) .............................................................15, 19, 21, 24

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

*In re Remec Inc. Sec. Litig.*,
415 F. Supp. 2d 1106 (S.D. Cal. 2006) ...................................................................21

*In re Splash Tech. Holdings, Inc.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................27

*In re Veritas Software Corp. Sec. Litig.*,
2004 WL 7338912 (N.D. Cal. May 19, 2004) .......................................................17

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (C.D. Cal. 2007).................................................................21

*Iron Workers Loc. No. 25 Pension Fund v. Oshkosh Corp.*,
2010 WL 1287058 (E.D. Wis. Mar. 30, 2010)..............................................25, 26

*Jaszczyszyn v. SunPower Corp.*,
2024 WL 3463348 (N.D. Cal. July 17, 2024) .......................................................22

*Joyce v. Amazon.com, Inc.*,
2023 WL 8370101 (W.D. Wash. Dec. 4, 2023).....................................................21

*Lamontagne v. Tesla, Inc.*,
2024 WL 4353010 (N.D. Cal. Sept. 30, 2024).......................................................30

*Lew v. ON Semiconductor Corp.*,
2025 WL 1918543 (D. Ariz. July 11, 2025) ..........................................................23

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)................................................................................27

*Loc. 353, I.B.E.W. Pension Fund v. Zendesk, Inc.*,
2022 WL 614235 (9th Cir. Mar. 2, 2022) .............................................................24

*Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022)................................................................................15

*McGovney v. Aerohive Networks, Inc.*,
2019 WL 8137143 (N.D. Cal. Aug. 7, 2019)........................................................17

*N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*,
537 F.3d 35 (1st Cir. 2008) ...................................................................................23

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020)..........................................................................15, 23

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ....................................................................................26

*Paddock v. Dreamworks Animation SKG, Inc.*,
  2015 WL 12711653 (C.D. Cal. Apr. 1, 2015), *aff'd sub nom.*
  *Roofers Loc. No. 149 Pension Fund v. DreamWorks Animation*
  *SKG, Inc.*, 677 F. App'x 376 (9th Cir. 2017) .....................................................25

*Pension Plan v. Beyond Meat, Inc. et al.*,
  Case No. CV 23-0362-MWF (AGRx) (C.D. Cal. Feb. 26, 2025) .......................9

*Pirani v. Netflix, Inc.*,
  2024 WL 4894291 (N.D. Cal. Nov. 26, 2024)...............................................27

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051
  (9th Cir. 2014) ....................................................................................18, 21

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021)......................................................................23

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001), *abrogated on other grounds by*
  *Matrixx Initiatives v. Siracusano*, 563 U.S. 27 (2011).....................10, 11, 12, 14

*Roth v. OfficeMax, Inc.*,
  527 F. Supp. 2d 791 (N.D. Ill. 2007)..............................................................27

*Sneed v. AcelRx Pharms., Inc.*,
  2022 WL 4544721 (N.D. Cal. Sept. 28, 2022)................................................29

*Stein v. Bridgepoint Educ., Inc.*,
  2020 WL 3250596 (S.D. Cal. June 15, 2020)..................................................24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ..................................................................................15

*Terenzini v. GoodRx Holdings, Inc.*,
  2022 WL 2189592 (C.D. Cal. June 9, 2022)...................................................28

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019)............................................................28

7

*Wanca v. Super Micro Comp. Inc.*,
  2018 WL 3145649 (N.D. Cal. June 27, 2018) ...................................................29

*Waterford Twp. Police v. Mattel, Inc.*,
  321 F. Supp. 3d 1133 (C.D. Cal. 2018)...........................................................15

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) *as amended* (Feb. 10, 2009) .........................passim

**STATUTES**

15 U.S.C. § 78u-4(b)(1).......................................................................................15

15 U.S.C. § 78u-5(c)(1).......................................................................................27

**RULES**

Fed. R. Civ. P. 9(b) .............................................................................................15

Rule 10b-5(a) .......................................................................................................29

Rule 10b-5(b) .......................................................................................................30

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No.: 2:26-cv-00742-FMO-PVC
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT

## I.     INTRODUCTION

When a company announces minor accounting corrections in its financial statements, meritless securities class action lawsuits often follow.  This is one of those cases.  In preparing its consolidated financial statements for the third quarter of 2025, Beyond Meat, Inc. ("Beyond") estimated that its fair value was less than the book value, resulting in an impairment of certain long-lived assets.  Beyond further identified and disclosed a material weakness in its internal controls relating to accounting for non-recurring and complex transactions.  The next quarter, during the financial close procedures, Beyond discovered and corrected three immaterial errors in its previously issued 2025 quarterly consolidated financial statements and identified an additional material weakness relating to inventory valuation.  Beyond promptly disclosed these issues as well.  Far from engaging in securities fraud, Beyond did what responsible public companies should do:  it used judgment and significant estimates to prepare its consolidated financial statements under generally accepted accounting principles ("GAAP"), continually evaluated whether those financial statements fairly presented its financial affairs, and updated its quarterly filings and earnings announcements to account for new and material information.

Plaintiffs' Complaint confirms that Beyond was transparent with investors about the struggles that drove a steady decline in the company's financial performance and stock price since 2021.  Indeed, these plaintiffs are not the only ones who have sought to capitalize on Beyond's struggles.  *See Saskatchewan Healthcare Emps.' Pension Plan v. Beyond Meat, Inc. et al.*, Case No. CV 23-0362-MWF (AGRx) (C.D. Cal. Feb. 26, 2025) (dismissing with prejudice securities class action complaint that followed 93% stock-price drop).

Here too, the Complaint fails to meet the PSLRA's rigorous and heightened standards to plead a federal securities law claim.  To start, Plaintiffs fail to allege particularized facts giving rise to a strong inference of scienter.  Rather than plead *facts*, Plaintiffs cite unreliable and irrelevant confidential-witness accounts,

9

hindsight speculation, and conclusory assertions. No allegations speak to what the Defendants knew *at the time of the challenged statements* about the later-disclosed accounting issues. Plaintiffs' failure to plead a strong inference of scienter requires dismissal of the Complaint.

Compounding this pleading failure, Plaintiffs do not allege that any statements relating to Beyond's long-lived assets were false or misleading when made. GAAP fair value assessments are based on management's judgments and estimates used to prepare the financial statements, and Plaintiffs do not come close to pleading the facts necessary for an actionable opinion. Plaintiffs' challenge to Defendants' internal control over financial reporting and GAAP-compliance statements fails for the same reason.

Plaintiffs' lawsuit is exactly the type of "fraud by hindsight" the Ninth Circuit forbade years ago. *See Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001), *abrogated on other grounds by Matrixx Initiatives v. Siracusano*, 563 U.S. 27 (2011). The only reasonable inference from the Complaint is that once Defendants identified a potential issue, they announced it and corrected it—not that they intended to deceive. The Complaint should be dismissed.

## II.    BACKGROUND

### A.    After Early Success, Beyond's Growth Is Stymied By Operational And Financial Struggles

Founded in 2009, Beyond innovates and sells plant-based protein products. ¶¶ 5, 40, 42. In 2019, Beyond went public and had early success. ¶ 6. In January 2021, as its performance and revenue "surged," Beyond entered into a 12-year lease for a "state-of-the-art Innovation Center" as its Campus Headquarters. ¶¶ 46, 73-74. Beyond then raised capital to continue fueling its success, issuing notes with face value of around $1 billion and repayment due in 2027. ¶¶ 6, 74.

But Beyond soon faced challenges in navigating an uncertain and inconsistent market. The Company's revenue and cash steadily declined from 2021 forward—

10

facts that Plaintiffs do not dispute were timely disclosed to investors. ¶ 75. Beyond further explained to investors beginning in 2022 that it "pivoted [] focus toward sustainable long-term growth supported by three pillars." ¶ 76. Those pillars included operating expense reduction, inventory reduction and more efficient inventory management, and focusing on near-term growth drivers while supporting key strategic long-term partners and opportunities. *Id.*; *see also* Ex. 1 at 80. The Company reduced its workforce in October 2022 and November 2023 as part of its newly initiated Global Operations Review ("Review"). ¶¶ 76-78.

The Review resulted in "non-cash charges such as provision for excess and obsolete inventory and potential impairment changes [sic], write-offs, disposals and accelerated depreciation of fixed assets, and losses on sale and write-down of fixed assets; [and] further optimization of [Beyond's] manufacturing capacity and real estate footprint." ¶ 77. Beyond disclosed the Review carried risk: its ability to make progress toward sustaining profitability depended on a number of assumptions, including Beyond's "ability to monetize inventory and manage working capital," and overcoming challenges like declining demand in the plant-based meat industry. Ex. 1 at 35. And the Review was not an overnight fix: Beyond warned that it had "recurring net losses and negative operating cash flows," and expected it would "continue to operate at a loss for the foreseeable future." Ex. 1 at 93; Ex. 2 at 553.

As part of the Review, Beyond laid off another 44 people in February 2025. ¶ 78. Brown further told investors on a February 26, 2025 conference call that Beyond was potentially looking to sublease "some excess space." ¶ 121.

During the same call, Kutua acknowledged that Beyond needed to do something "profound" to repay the notes that were coming due in 2027. ¶ 81. Indeed, Beyond owed $1.142 billion to bondholders with only $102 million cash on hand at the end of Q1 2025 and $326.5 million in annual revenues for 2024. ¶¶ 75, 80-81. Contrary to Plaintiffs' characterization that Beyond was "stringing investors along regarding how [it] would possibly pay" the notes, Kutua shared that Beyond

11

was "evaluating potential transactions" to address the notes.  ¶ 82.

When Beyond issued its 2024 10-K on March 5, 2025, the filing reiterated Defendants' warnings from the call.  Beyond warned that it was considering subleasing its unoccupied space, which could result in an impairment.  Ex. 1 at 59. Beyond further warned that if it could not repay the notes, it "would be in default under that indebtedness, which could, in turn, result in that and our other indebtedness becoming immediately payable in full, and could cause us to become insolvent or enter bankruptcy proceedings."  Ex. 1 at 61.

The market was already well aware of the risks relating to these notes.  From at least the start of the putative Class Period, Beyond cautioned that its "ability to satisfy our obligations under" the notes and its "ability to refinance the Notes" was uncertain, and flagged "the significant dilution to existing stockholders that will result if we exchange any portion of our outstanding Notes for equity."  Ex. 1 at 12.

**B.     Beyond Is Candid With Investors Regarding Its GAAP Judgments**

From the start of the Class Period, Beyond explained how it formulated its accounting judgments and estimates under GAAP and disclosed factors that could impact future financial statements. ¶ 147.  For instance, the Company disclosed that assessing the value of its long-lived assets required estimating future company performance, and warned that "[f]ailure to achieve forecasted operating results, . . . changes in market conditions and declines in our market capitalization . . . could result in impairment of our assets." *Id*.  Beyond provided investors with information about its reserve for excess and obsolete inventory as well—specifically, that it may be required to substantially discount inventory or be unable to timely sell it.  Ex. 1 at 37.  Doing so would require Beyond to increase its inventory provision or write-off inventory, which could in turn "substantially harm[]" Beyond's financial results. *Id.*  In fact, Beyond disclosed that its gross profit for the years ended December 31, 2023 and 2022 "was negatively impacted by write-down of inventory." *Id.*

Beyond's 2024 10-K further disclosed that its inventory provision was a

12

"critical audit matter," ¶ 234, "because of the significant degree of auditor judgment and effort required in identifying the population of inventory that exhibits indicators of excess and obsolescence exposure and performing audit procedures to evaluate management's estimates and assumptions in determining the completeness of the provision for excess and obsolete inventory due to their subjective nature" (Ex. 1 at 106). At the start of the Class Period, Beyond's auditor Deloitte issued a clean audit opinion for Beyond's 2024 consolidated financial statements and internal controls over financial reporting. Ex. 1 at 105-106.

**C.    Throughout 2025, Beyond Disclosed Continued Business Struggles**

On May 7, 2025, Beyond announced its financial results for Q1 of 2025. ¶ 151. Far from hiding inventory issues, Brown disclosed that the Company "recorded a particularly large inventory provision." ¶ 156. Of the $4.3 million provision recorded, $1.3 million arose from "specific strategic decisions to increase inventory provision for donation of certain inventory items." ¶ 151; Ex. 2 at 547-48.

Beyond further shared that it had been impacted by a "slowdown in consumption" due to the "uncertain macroeconomic environment," and withdrew its full-year 2025 guidance, signaling uncertainty about its future. ¶¶ 126, 128.

Beyond's financial difficulties continued into Q2 of 2025. Beyond laid off 44 people in August (¶ 78) and continued to consider how it could pay off its debts, including the notes (¶ 83). On September 29, 2025, Beyond announced an offer to exchange the convertible notes (which Beyond warned it could not repay) for shares of its common stock and new convertible notes due 2030, to avoid bankruptcy. *See* ¶¶ 7, 85.

**D.    Beyond Discloses Non-Cash Impairment Of Long-Lived Assets And Material Weaknesses, And Corrects Immaterial Accounting Errors**

On October 24, 2025, the Company disclosed that, following an impairment review, it determined that the carrying amount of certain of its long-lived assets was

13

not recoverable from the projected future cash flows and therefore it expected to record a material impairment.  ¶¶ 12, 203.  On November 3, 2025, Beyond announced it needed more time to complete its impairment review and would delay reporting its Q3 2025 results.  ¶ 13.

Four days later, Beyond updated the market, disclosing a material weakness in its internal "controls associated with the accounting for non-recurring and complex transactions." ¶ 14.  The Company issued its financial results on November 10, 2025, which included a $77.4 million impairment charge related to long-lived assets. ¶ 15.  On an earnings call the next day, Kutua explained that the charge was "allocated to PP&E, operating lease [right-of-use] assets and prepaid lease costs." ¶ 16.  The Company's 10-Q filed on November 12, 2025, reflected the previously disclosed impairment charge and material weakness.  ¶¶ 102, 104.

While reviewing the Company's year-end results, Beyond discovered a second "material weakness in the Company's internal control over financial reporting . . . related to controls associated with the accounting for its inventory provision." ¶ 219.  Beyond disclosed that weakness in a press release filed on March 16, 2026. *Id*.  Beyond subsequently disclosed in a March 31, 2026 press release that it "identified errors" in its 2025 quarterly financials "relating to (i) inventory valuation, (ii) debt issuance costs, and (iii) the previously disclosed impairment of long-lived assets." ¶ 107.  Specifically, the Company had overstated its inventory, misclassified $14.1 million in costs from its debt restructuring activities, and overestimated its Q3 impairment charge by $26.1 million (i.e., it should have been less, $51.3 million).  ¶ 223.  Beyond explained that the "errors identified . . . were immaterial to the previously issued interim period consolidated financial statements" for Q1-Q3 2025.  ¶ 107.

Opportunistically pouncing on a distressed company, this lawsuit was filed in shortly after the Company's Q3 2025 announcements.  Dkt. 1.  Plaintiffs filed their amended complaint on June 1, 2026.  Dkt. 49.

14

## III. ARGUMENT

To state a Section 10(b) claim, Plaintiffs must adequately allege (among other elements): (1) a material misrepresentation or omission of fact; and (2) scienter. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Section 10(b) claims are subject to Rule 9(b)'s exacting and heightened pleading requirements and the PSLRA, which "present no small hurdle." *Macomb Cnty. Emps. Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1096 (9th Cir. 2022). Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The PSLRA mandates that Plaintiffs "specify each statement alleged to have been misleading," and the "reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

The PSLRA further requires Plaintiffs to state with particularity facts giving rise to a strong inference of scienter, that is, Defendants acted with an "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007). Plaintiffs must allege that Defendants "made false or misleading statements either intentionally or with deliberate recklessness." *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1151, 1156 (C.D. Cal. 2018). The recklessness standard "is actually much closer to one of intent," *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014), as the statement must constitute such an "extreme departure from the standards of ordinary care" that is "so obvious that the actor must have been aware of it." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) *as amended* (Feb. 10, 2009).

This "strong inference" requirement "has teeth." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). The Complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226 (9th Cir. 2017). As a result, "the court must consider *all* reasonable inferences," including "inferences unfavorable to the plaintiffs." *Gompper v. VISX,*

15

*Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

The Complaint does not meet these requirements.

### A.    Plaintiffs Fail To Allege A Strong Inference of Scienter

1.    Plaintiffs Do Not Allege The Individual Defendants Acted With An Intent To Deceive Or Deliberate Recklessness

a.    *Alleged GAAP Failures Do Not Support Scienter*

Plaintiffs' GAAP-based case is premised on hindsight.  The fact that Beyond disclosed an impairment, material weaknesses, and accounting errors does not mean Defendants must have known of these issues in advance.  Indeed, "the Ninth Circuit has repeatedly held that the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046 (N.D. Cal. 2009). "Plaintiffs must plead facts that support an inference that Defendants were actually aware that (or reckless with respect to whether) the accounting was incorrect." *Id.* "[N]egligence, or even gross negligence" is not enough.  *Duffaydar v. Sonder Holdings Inc.*, 2025 WL 4697183, at *5 (C.D. Cal. Aug. 27, 2025) (dismissing where CW allegations amounted to assertion that defendant "wasn't very good at accounting").

Plaintiffs do not meet this standard because they allege nothing about any Defendant's awareness at the time of the challenged statements that any of Beyond's accounting or controls were deficient.  This glaring gap "fatally undermine[s]" any scienter inference.  *Cadence*, 654 F. Supp. 2d at 1050 (no scienter where plaintiffs failed to allege "knowledge of the facts that rendered" the accounting classifications incorrect).

Moreover, Plaintiffs admit that inventory was a "critical audit matter," meaning it received scrutiny from Beyond's auditor.  ¶ 234; Ex. 1 at 105-106. Deloitte's clean audit opinion weakens any inference that Defendants "knew they were violating GAAP" or had internal-controls weaknesses, because it "increases

16

the lengths to which [Defendants'] fraud would have to go to avoid detection." *Bajjuri v. Raytheon Techs. Corp.*, 641 F. Supp. 3d 735, 761-62 (D. Ariz. 2022). In fact, it is "highly probative" of an *absence* of scienter. *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1157-58 (C.D. Cal. 2007).

b.    <u>SOX Certifications Do Not Support Scienter</u>

Nor can Plaintiffs demonstrate scienter with Brown's and Kutua's SOX-required certifications that the Company's internal controls were "effective." ¶ 227. *Zucco*, 552 F.3d at 1002-04 (SOX certifications "add nothing substantial to the scienter calculus"). Were it otherwise, SOX certifications could create an inference of scienter in "every case where there was an accounting error," which would "eviscerate the pleading requirements for scienter set forth in the PSLRA." *Id.* at 1004.

c.    <u>The CWs Do Not Support Scienter</u>

Plaintiffs' scienter allegations rest on CW accounts that do not relate to what either Defendant knew and when.

***First***, none of the CWs claims to have spoken with either Individual Defendant. *See McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *19 (N.D. Cal. Aug. 7, 2019) ("CWs' allegations provide little reliable basis to support an inference of the Defendants' scienter because the CWs do not have personal knowledge as to what the Defendants knew or did not know."). So, they cannot possibly allege that Defendants "knew of the accounting [issues] central to this case." *Bao v. Solarcity Corp.*, 2016 WL 4192177, at *5 (N.D. Cal. Aug. 9, 2016); *see also Cadence*, 654 F. Supp. 2d at 1047 ("No CW specifically ties any Defendant to the accounting determinations at issue.").

***Second***, none of the CWs claims to know about Beyond's accounting or controls—unsurprising, considering none of them worked in accounting. *See Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1114-15 (N.D. Cal. 2009) (CWs who were not in accounting did not bolster fraudulent accounting allegations); *In re*

17

*Veritas Software Corp. Sec. Litig.*, 2004 WL 7338912, at *7 (N.D. Cal. May 19, 2004) (no CW "had any knowledge of any accounting decisions").

**Third**, none of the CWs was at the Company when the impairment and first material weakness were disclosed in October 2025, nor when the immaterial errors and second material weakness were disclosed in March 2026. ¶¶ 34-39. As a result, none alleges what specific facts resulted in the Company's disclosures, let alone "exactly" what either Defendant "knew, nor when [they] knew it." *In re Apple Computer, Inc.*, 127 F. App'x 296, 302 (9th Cir. 2005). Indeed, CW3 and CW6 left Beyond before the Class Period, and Plaintiffs do not even allege when CW5 was at the Company, entitling them to little weight. ¶¶ 36, 38, 39; *see Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014); *Zucco*, 552 F.3d at 1002.

**Finally**, evaluating the CWs' accounts as to each issue reveals their irrelevance to scienter.

**Impairment.** Plaintiffs rely on CW2 to claim that "Defendants knew of the impaired plant, property & equipment assets by March 2025 at the latest." ¶ 117; *see also* ¶ 227. As support, CW2 asserts that in late 2024, he "identified assets the Company had lost track of and found that many assets he located did not match the assets listed on file." *Id.* But that account supports that Defendants did *not* know about impaired assets. *See In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1149-50 (D. Colo. 2011) (CW account that company lacked inventory tracking systems suggested defendants did not know of issues). And CW2 says nothing about whether or how his work was accounted for or who knew about it. ¶ 117; *see also Curry v. Hansen Med., Inc.*, 2011 WL 3741238, at *5 (N.D. Cal. Aug. 25, 2011) (rejecting reliance on CWs who did not work directly with accounting or were not employed throughout class period). Moreover, Plaintiffs offer no facts indicating that the Q3 2025 impairment had anything to do with the Company not tracking assets properly. The facts they *do* allege show the impairment was due to deteriorating market

18

conditions, which meant that the "carrying amount of certain of its long-lived assets was not recoverable from the projected undiscounted future cash flows of the relevant asset group." ¶¶ 103, 203.

Plaintiffs further rely on CW1 to claim that Defendants "knew" the Company "was never going to be able to use" all the space at the Campus Headquarters, and that finding a subletter "wasn't a guarded secret." ¶ 120. So what? The AC *quotes* Brown's public disclosure that "there is some excess space that we may look to sublease." ¶ 121. That's why Beyond warned it "may not be able to build out or occupy the rest of the Campus Headquarters," such that it may need to take an impairment. ¶ 145. Beyond's disclosures *track*, not contradict, CW1's alleged statements. *See In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 42 (1st Cir. 2017) (no scienter where CW statements tracked disclosures).

**Material Weaknesses.** None of the CWs even references Beyond's internal controls. *See In re Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1162-64 (S.D. Cal. 2008) (giving no weight to CW allegations that lack relevance to alleged misrepresentations).

**Immaterial Errors.** *First*, no CW discusses the disclosed error relating to debt issuance costs. *See id*.

*Second*, Plaintiffs point to their CWs' reports about alleged "inventory issues" and claim that inventory "should have been written off long before" Q4 2025 (¶ 130), and Defendants knew about "overstated inventory" (¶ 227). Plaintiffs' conclusory rationale underscores why the CWs lack reliability. For example, CW5's allegation of unsold product stems from 2022—*years* before the Class Period. ¶ 134. And CW4 says nothing at all about *when* Beyond purportedly had warehouses containing "extradit [sic] that wasn't usable." ¶ 135. Plaintiffs cannot point to unsold inventory from an earlier time and assume that relates to the later-in-time accounting error and material weakness. *See NVIDIA*, 768 F.3d at 1061-62 (affirming dismissal where CWs did not work at company when alleged issue arose

19

"or worked in an area unrelated to it").

But even if credited, the CWs' accounts do not contradict the challenged inventory statements. Their claims of "pallets of unsold, unusable inventory sitting in warehouses" (¶ 227) do not suggest Beyond improperly accounted for that inventory. Moreover, CW4's determination that the "extradit [sic] [ ] wasn't usable" represents little more than "second-guessing of management decisions." *Garcia v. J2 Glob., Inc.*, 2022 WL 22717936, at *5 (C.D. Cal. Aug. 8, 2022), *aff'd sub nom.* 99 F.4th 527 (9th Cir. 2024) (rejecting CW accounts that did not "speak to Defendants' mental state" and "simply amount to negative opinions about [company's] business practice").

Indeed, Plaintiffs' own allegations undermine any speculation that Beyond was not updating its estimated inventory provision: Plaintiffs admit that on May 7, 2025, the Company reported $1.3 million "in non-cash charges arising from strategic decisions to increase inventory provision for donation of certain inventory items." ¶ 151. And in the 2024 10-K, Beyond disclosed that for the years ended December 31, 2022 and 2023, its gross profit "was negatively impacted by write-down of inventory." Ex. 1 at 37.

At bottom, Plaintiffs' CW allegations are nothing more than scattered allegations of operational issues and unsold inventory, and provide no support for a strong inference of scienter.

### d. Engagement And High-Level Positions Do Not Support Scienter

Relying on CW3's allegations, Plaintiffs accuse Brown of being "hands-on" (¶ 132) and a "micromanager" (¶ 133; *see also* ¶ 227). Allegations about Brown's management style "say nothing about [his] knowledge of the accounting errors and therefore have no probative value." *Duffaydar*, 2025 WL 4697183, at *5. CW3 claims Brown was "trying to track how many [sales] calls we made and hold us accountable." ¶ 133. That has no bearing on whether the Company properly

20

accounted for inventory, let alone that Brown had "an intent to deceive or manipulate." *In re Remec Inc. Sec. Litig.*, 415 F. Supp. 2d 1106, 1118-19 (S.D. Cal. 2006) (dismissing challenge to company's sales forecasts as false and misleading despite CW allegations that defendant pressured sales team).

Plaintiffs further claim Brown and Kutua were both "privy" to "all material information." ¶¶ 229-230. This generic allegation is even weaker than allegations of access to weekly reports—which are regularly rejected in the Ninth Circuit. *See In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1175 (C.D. Cal. 2007) ("mere access" to unspecified information, "even combined with allegations of a hands-on management style, is not enough to show deliberate recklessness"); *see also Espy v. J2 Glob., Inc.*, 99 F.4th 527, 539-40 (9th Cir. 2024) (receipt of "weekly reports of performance results" insufficient); *Intuitive Surgical*, 759 F.3d at 1063 ("[m]ere access to reports containing undisclosed sales data" insufficient).

Nor does Plaintiffs' allegation that Defendants "made misleading statements in response to direct queries from analysts" support scienter. ¶ 227. The only responses to analyst questions Plaintiffs identify relate to "finding a solution" to paying off the 2027 notes (¶¶ 81-82) and subleasing Beyond's headquarters (¶ 121)—statements Plaintiffs admit were *true*. *See, e.g.*, ¶¶ 8, 120. The "mere fact that the Individual Defendants spoke about a topic does not provide support for a strong inference of scienter." *Joyce v. Amazon.com, Inc.*, 2023 WL 8370101, at *14 (W.D. Wash. Dec. 4, 2023).

> e.  *Core Operations Doctrine Does Not Support Scienter*

Invoking the "core operations" theory, Plaintiffs allege that inventory and asset valuation were "essential" to Beyond. ¶¶ 231-36. "Proof under this theory is not easy." *Intuitive Surgical*, 759 F.3d at 1062. "[A]bsent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter." *NVIDIA*, 768 F.3d at 1063-64; *see also*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No.: 2:26-cv-00742-FMO-PVC
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT

*Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at \*12 (N.D. Cal. July 17, 2024) (similar).

Plaintiffs do not come close; at most, they allege "inventory management" was important to Beyond's business and then "presume that Defendants were apprised of, had access to, or had actual knowledge of all material information related to [Beyond], its inventory amounts and valuations, and its valuations of long-lived assets." ¶¶ 231, 235. But allegations that "management had access to" accounting numbers, "or that the management analyzed the inventory numbers closely" do not support an inference of scienter. *Zucco*, 552 F.3d at 1000. And nothing in the Complaint "suggests that [Defendants] had access to the underlying information from which the accounting numbers were derived." *Id.* at 1001. Plaintiffs offer zero allegations suggesting that Defendants knew earlier that the Company's accounting was wrong or controls were deficient. On the contrary, Deloitte's clean audit opinion supports the opposite inference. *See* Section III.A.1.a.

f.      *Plaintiffs' Motive Speculation Does Not Support Scienter*

Lacking any allegations that either Individual Defendant knew anything undermining Beyond's accounting and related disclosures at the time of the challenged statements, Plaintiffs fall back on a speculative motive theory. Motive alone is not sufficient to "make a strong showing of scienter." *Cadence*, 654 F. Supp. 2d at 1049. Even so, Plaintiffs do not allege either Individual Defendant had a personal motive to lie, e.g., stock sales. *See Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at \*15 (N.D. Cal. Apr. 2, 2024) ("[A] lack of stock sales can detract from a scienter finding."). They instead claim Defendants hid the later disclosed accounting and controls issues "to save the Company" by the notes exchange transaction. ¶ 97. But satisfying a debt is little more than a "motive to present better financial statements," which is "insufficient to establish a strong inference of scienter." *Cadence*, 654 F. Supp. 2d at 1049.

Worse, Plaintiffs' theory hinges on speculation and fraud by hindsight. *See*

22

*In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *18-20 (N.D. Ill. Jan. 12, 2021) ("ad-hoc determination" that company "would not have met certain goals without the alleged fraud [was] a hindsight conclusion" that said nothing about defendants' states of mind).  It was no secret that Beyond was on the "verge" of bankruptcy and was looking for a solution to the $1.1 billion in debt it owed under the 2027 notes, which it repeatedly warned it might not be able to repay.  *See e.g.*, Ex. 1 at 60-61; Ex. 2 at 494; Ex. 3 at 858.  The Complaint "alleges no facts to show that" the transaction would not have been consummated or the terms would have been different "but for" earlier disclosure of the accounting issues.  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1107-08 (9th Cir. 2021).  "Speculation and unsupported conclusions" as to what the noteholders would have done does not amount to a strong inference of scienter.  *Lew v. ON Semiconductor Corp.*, 2025 WL 1918543, at *14 (D. Ariz. July 11, 2025).   And Plaintiffs are stuck with their allegations that Beyond owed the noteholders $1.142 billion dollars, but had only $102 million cash at the end of Q1 2025 and $326.5 million in annual revenues for 2024.  ¶ 7.  Beyond had long-lived assets of $300–328 million and $100–110 million in inventory.  ¶ 8.  That Beyond's ***non-cash*** assets would save the day makes no sense.  And it makes even less sense to suggest that the non-cash impairment of long-lived assets ($51.3 million), the non-cash inventory errors ($8.5 million), and the debt issuance cost error ($14.1 million) would have made a difference to noteholders.  *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020) (no scienter pled where plaintiff's theory "d[id] not make a whole lot of sense" and "d[id] not resonate in common experience").

### 2. Plaintiffs Do Not Allege Corporate Scienter

Having failed to establish either Individual Defendant's scienter, Plaintiffs fail to plead scienter as to Beyond.  ¶ 237; *Prodanova*, 993 F.3d at 1108.  Corporate scienter *requires* an individual speaker with scienter.  *See, e.g.*, *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 56 (1st Cir. 2008); *see*

23

*also Loc. 353, I.B.E.W. Pension Fund v. Zendesk, Inc.*, 2022 WL 614235, at *2 (9th Cir. Mar. 2, 2022) (declining to decide whether general corporate scienter theory is viable). The only exception is when facts are "so dramatically false" that at least some corporate official "must have known of their falsity upon publication." *NVIDIA*, 768 F.3d at 1063. As demonstrated above, this is not that case. *See, e.g.*, *id.* (alleged omissions about product defect not so dramatically false to trigger corporate scienter). There are zero allegations to suggest that anyone at Beyond knew or recklessly disregarded information suggesting that the accounting was wrong or controls were deficient at the time of the challenged statements. *See In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *13-14 (C.D. Cal. May 23, 2008) (no scienter based on "significant" accounting errors requiring "large or multiple restatements" absent specific allegations that defendants possessed contemporaneous information).

### 3. The More Compelling Inference Is Good Faith, Not Fraud

Contrary to Plaintiffs' flimsy theory of fraud-by-hindsight and supposed "motive," the "opposing inference of nonfraudulent intent"—accounting and internal controls mistakes that neither Beyond, nor its independent auditors knew about—is more compelling. *Bao*, 2016 WL 4192177, at *8. That is especially true considering the Complaint itself "demonstrate[s] consistent recognition of and response to [accounting issues and] internal control weaknesses set forth in detail in [Beyond's] public filings." *Stein v. Bridgepoint Educ., Inc.*, 2020 WL 3250596, at *13 (S.D. Cal. June 15, 2020); *see* Section II.

Plaintiffs' acknowledgment that the errors in Q4 *reduced* the Q3 impairment likewise underscores that the more compelling inference is good faith. ¶ 110. If Defendants were trying to defraud investors, why would they initially overstate the impairment charge? *E.g.*, *Cadence*, 654 F. Supp. 2d at 1050 (inference of intent to defraud weaker than inference that "there was simply a control deficiency within the troubled Company").

24

**B.      Plaintiffs Fail To Allege Falsity**

      1.      <u>Statements Relating To Long-Lived Assets Were Not False Or Misleading</u>

Plaintiffs challenge ten statements about Beyond's long-lived assets (¶¶ 140, 143, 145, 147, 151, 158, 166, 171, 176, 184) as false because Beyond eventually recorded a non-cash impairment charge in its Q3 2025 10-Q. *See, e.g.*, ¶¶ 141, 203, 207. Plaintiffs' hindsight challenge fails on multiple levels.

      a.      <u>Plaintiffs Do Not Allege A GAAP Violation</u>

"Allegations of a failure to comply with GAAP, without more, are not actionable under the PSLRA." *Bruce v. Suntech Power Holdings Co. Ltd.*, 2013 WL 6843610, at *3 (N.D. Cal. Dec. 26, 2013). Plaintiffs' GAAP case "rests solely on the later-discovered" facts. *Id.*; *see, e.g.*, ¶¶ 141, 146, 151, 157. They make "no allegation that [Beyond's] valuation[s were] otherwise false at the time based on the information available to the company." *Id.* Indeed, they allege no facts at all about the Company's consideration of fair value or impairment prior to Q3 2025. *See Iron Workers Loc. No. 25 Pension Fund v. Oshkosh Corp.*, 2010 WL 1287058, at *14, 17 (E.D. Wis. Mar. 30, 2010) (dismissing complaint that defendant should have taken impairment earlier where complaint "simply cite[d] disappointing figures from the future as though these are evidence of fraud in the past"). That is fatal to their claims. *Paddock v. Dreamworks Animation SKG, Inc.*, 2015 WL 12711653, at *7 (C.D. Cal. Apr. 1, 2015), *aff'd sub nom. Roofers Loc. No. 149 Pension Fund v. DreamWorks Animation SKG, Inc.*, 677 F. App'x 376 (9th Cir. 2017) ("later recorded [] impairment charge" insufficient to challenge "earlier statements").

      b.      <u>Plaintiffs Do Not Allege An Actionable Opinion</u>

Beyond's impairment decisions depend on fair value determinations (*see* ¶ 70) "which are not matters of objective fact" but rather Beyond's subjective beliefs about fair value. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 850 (N.D. Cal. 2014). Plaintiffs therefore must

25

allege with particularity that (1) Defendants "did not hold the belief [they] professed"; (2) the "supporting fact[s]" underlying the opinion "were untrue"; or (3) Defendants omitted "facts going to the basis for the … opinion" that make the opinion misleading to a "reasonable person reading the statement fairly and in context." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186, 194 (2015).

***First***, Plaintiffs do not allege anything about Defendants' state of mind (*see* Section III.A), let alone that they "did not believe the fair value calculated." *Align Tech.*, 65 F. Supp. 3d at 856.

***Second***, Plaintiffs do not allege any facts or assumptions underlying Beyond's fair-value determination, let alone allege that any were untrue or were misleadingly omitted from Beyond's disclosures.  Plaintiffs have "not identified internal documents or confidential witness testimony" showing that Beyond's "impairment analysis was performed on unreasonable assumptions and that Defendants knew this was the case." *Align Tech.*, 65 F. Supp. 3d at 852.  Instead, Plaintiffs challenge Beyond's stated reasons for undergoing an impairment review, claiming these circumstances "existed prior to Q3 2025." ¶ 125.  Plaintiffs are purely guessing and ignore that factors affecting an interim impairment analysis "are all subject to a degree of interpretation and judgment." *Align Tech.*, 65 F. Supp. 3d at 860.

Plaintiffs point to Beyond withdrawing its full-year 2025 guidance, claiming it is "preposterous to assert that it was not until poor performance in Q3 2025 that an impairment review was triggered." ¶ 126.  That assertion is way "too broad to be objectively assessed." *City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Ltd. Co.*, 655 F. Supp. 2d 262, 271-72 (S.D.N.Y. 2009) (rejecting speculative claim that defendants should have taken impairment sooner).  Likewise, Plaintiffs insist Beyond's stock hit a 52-week low "multiple times prior to Q3 2025"—ignoring any mitigating factors that may have prevented the impairment review.  *See Oshkosh Corp.*, 2010 WL 1287058, at *16 (rejecting claim that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Case No.: 2:26-cv-00742-FMO-PVC
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT

impairment should have been taken sooner given the evaluation is a "custom process based on several factors present at the time the assessment is made"). Plaintiffs further point to Brown's statement that there was a "slowdown in consumption." ¶ 128. Missing, however, is any indication that Brown (or anyone else) *knew* that the "ongoing softness" in plant-based meats would continue. *See Vodafone*, 655 F. Supp. 2d at 268 ("lack of clairvoyance simply does not constitute securities fraud"). Finally, Plaintiffs' reliance on opinions from unidentified "accounting experts" about what should have triggered an impairment review (¶ 124) is insufficient. *See Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801 (N.D. Ill. 2007) (disregarding alleged "expert" who did not purport to have "personal knowledge" of company's "inner workings"); *see also Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 354 (2d Cir. 2022) (expert "opinions cannot substitute for facts under the PSLRA").

c.     *Beyond's Risk Disclosures Are Not Actionable*

Beyond's risk disclosures are not actionable. *See* ¶¶ 145, 147, 166, 184.

***First***, the PSLRA insulates forward-looking statements from liability where, as here, they are "identified" and "accompanied by meaningful cautionary language," or plaintiff fails to plead that the defendants had "actual knowledge" that they were false or misleading when made. 15 U.S.C. § 78u-5(c)(1). While Defendants need only take refuge in one, both prongs apply here: Beyond accompanied its forward-looking risk disclosures with meaningful cautionary language (*see* Ex. 1 at 12-16; Ex. 2 at 494-99; Ex. 3 at 858-63; Ex. 4 at 1290-95), and Plaintiffs have not alleged scienter let alone actual knowledge of falsity. *In re Splash Tech. Holdings, Inc.*, 160 F. Supp. 2d 1059, 1069 (N.D. Cal. 2001); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18 (9th Cir. 2002).

***Second***, the risk disclosures were not false when made because the warned-of risk had not materialized at that time. *Pirani v. Netflix, Inc.*, 2024 WL 4894291, at *8 (N.D. Cal. Nov. 26, 2024); *Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at

27

*14 (N.D. Cal. Mar. 31, 2022). At most, Plaintiffs allege that Beyond's financial condition continued to deteriorate and should have triggered an impairment review at least as early as the risk of impairment was disclosed. ¶ 75. But Plaintiffs' conclusory assertion does not make it so. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019) (no facts alleged that risk had materialized "at the time the risk disclosure statements were made").

### d.    *Plaintiffs Do Not Allege An Item 303 Violation*

Plaintiffs' attempt to repackage their "should have impaired sooner" claim into an Item 303 claim fails. ¶¶ 142, 153, 173. To state a claim premised on Item 303, Plaintiffs must allege facts showing (1) Defendants "knew of an adverse trend," (2) "the material impact of that trend," and (3) that "future material impacts are reasonably likely to occur from the present-day perspective." *Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 2189592, at *4 (C.D. Cal. June 9, 2022). Plaintiffs make the conclusory claim that "the impairments to long-lived assets were known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results." ¶¶ 142, 152, 173. But that is no different than saying Beyond should have taken the impairments sooner. For all the above reasons, that claim fails. Further, Plaintiffs have zero factual allegations that anyone at Beyond knew of an adverse trend relating to long-lived assets that was not disclosed. *See GoodRx*, 2022 WL 2189592, at *5 (any lack of disclosure "would be merely a failure to 'disclose the future'"). Contrary to Plaintiffs' claims that Beyond concealed the risk of a possible significant impairment (*e.g.*, ¶¶ 8, 89, 91) or alternatively that the warnings were boilerplate (¶¶ 148, 167), every quarter during the Class Period, Beyond disclosed that deteriorating conditions could lead to an impairment and adversely affect operating results. *See, e.g.,* Ex. 1 at 79-80; Ex. 2 at 539; *see also* Ex. 3 at 932; Ex. 4 at 1506-07.

28

2.    <u>The Controls And GAAP-Compliance Statements Are Inactionable Opinions</u>

Plaintiffs claim the Individual Defendants' statements regarding Beyond's compliance with GAAP and the effectiveness of its internal controls were false and misleading because the Company ultimately disclosed it had accounting errors and controls weaknesses.  ¶¶ 149, 164, 168, 169, 186, 188, 189, 200, 201.  But because the statements "concern the conclusions" of the Individual Defendants, they are opinions.  *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *24-25 (S.D.N.Y. Sept. 9, 2019); *see also, e.g.*, ¶ 149 (certifying "based on my knowledge").  Further, GAAP "are a collection of broad standards that are couched in rather general, and in some cases inherently subjective terms."  *Hufnagle v. Rino Intern. Corp.*, 2013 WL 160223, at *2 (C.D. Cal. Jan. 14, 2013) ("GAAP assertions are statements of professional judgment and opinion, not verifiable fact.").

Thus, to establish falsity, Plaintiffs "must do more than simply allege that the conclusions were wrong."  *AmTrust*, 2019 WL 4257110, at *25.  Instead, Plaintiffs must plead with particularity one of the three *Omnicare* prongs.  *See* Section III.B.1.  Plaintiffs do not identify any facts suggesting that at the time of certifications, Brown or Kutua had reached a different conclusion, nor do Plaintiffs allege known contrary or omitted facts at the time of the statements.  *See AmTrust*, 2019 WL 4257110, at *24-25.  A "later-discovered inaccuracy" is "not enough" to show Defendants *knew* about it "at the time" they certified the financials.  *Wanca v. Super Micro Comp. Inc.*, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018).  Indeed, the statements contain "important qualifying language" that certified "as of" the end of the period covered by the reports.  *Id.*

C.    **Plaintiffs Fail To Allege Scheme Liability**

To the extent Plaintiffs are trying to assert a claim for "scheme liability" under Rule 10b-5(a) or (c) (*see* ¶¶ 248-56), they have not alleged any facts to support that claim.  *Sneed v. AcelRx Pharms., Inc.*, 2022 WL 4544721, at *6 (N.D. Cal. Sept. 28,

29

2022) (complaint did "not allege with any particularity that Defendants engaged in a scheme"). Indeed, the AC uses the word "scheme" just six times, five of which are in the Count section. ¶¶ 236, 249, 250. And where (as here) the scheme claim depends on alleged misstatements, it fails for the "same reasons" as their Rule 10b-5(b) claim. *Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at \*17 (N.D. Cal. Sept. 30, 2024) (dismissing scheme claims for the "same reasons" as the Rule 10b-5(b) claims).

### D.    Plaintiffs' 20(a) Claims Should Be Dismissed

Plaintiffs' Section 20(a) claim fails because Plaintiffs do not plead a primary 10(b) violation. *See Zucco*, 552 F.3d at 990.

## IV.    CONCLUSION

For all these reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.

Respectfully submitted,

Dated:  July 15, 2026

LATHAM & WATKINS LLP
  Michele D. Johnson
  Heather A. Waller
  Ryan A. Walsh

By:  /s/ Michele D. Johnson
  Michele D. Johnson

*Attorneys for Defendants Beyond Meat, Inc., Ethan Brown, and Lubi Kutua*

30

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Beyond Meat, Inc., Ethan Brown, and Lubi Kutua, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated:  July 15, 2026                             By:  */s/ Michele D. Johnson*
                                                              Michele D. Johnson

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

Case No.: 2:26-cv-00742-FMO-PVC
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT